USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/8/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
AMINAH L. MAJIED, :
:
                 Plaintiff, : 16-CV-5731 (JMF)
:
       -v- : OPINION AND ORDER
:
NEW YORK CITY DEPT. OF EDUCATION et al., :
:
                 Defendants. :
:
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Aminah Majied is a teacher employed by the New York City Department of Education ("DOE") and a dues-paying member of the United Federation of Teachers ("UFT"). Proceeding *pro se*, she appears to bring claims against the DOE under, among other things, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 *et seq.*; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.*; and the First Amendment to the U.S. Constitution. She also brings claims, the exact nature of which is hard to discern, against the UFT and the Teachers Retirement System ("TRS"). The DOE and UFT now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Majied's claims against them. (Docket Nos. 17, 23). For the reasons stated below, their motions are granted. Additionally, the Court concludes that the claims against TRS fail as a matter of law and, thus, should be dismissed even though TRS has not yet appeared.

# BACKGROUND

The following facts, taken from the Complaint, are assumed to be true for the purposes of this motion. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001). Majied alleges that, while she was teaching a class on March 26, 2015, a student physically and verbally attacked her, resulting in "a back injury and Post Traumatic Stress Disorder," and leaving her incapable of working. (*See* Docket No. 2 ("Compl.") ¶¶ 1-2, 5). Following the attack, Majied reported the incident, in response to which Assistant Principals Ghandi Moussa and Matina Stergiopolous and Principal Rosemarie O'Mard ordered her back to work. (*Id.* ¶ 5). Further, Majied alleges that, when she attempted to report the incident more formally, Secretary Anna Mooney refused to grant her a comprehensive injury report ("CIR") or the appropriate reporting forms. (*Id.* ¶ 5). The following day, however, Majied completed a CIR and a revised incident report, which she submitted to Assistant Principal of Security David English. (*Id.* ¶ 6). The same day, Majied reported her injury to UFT by submitting an online form. (*Id.* ¶ 6).

In the weeks following the incident, Majied began pursuing leave options. On March 30, 2015, she submitted leave forms to Mooney and a handwritten CIR to English. (Compl. ¶ 7). The next day, English and UFT Chapter Leader Adam Abrego asked Majied to sign an electronic CIR, which she refused to do on the ground that the statement "was contrary" to the one she had submitted. (*Id.* ¶ 8). On April 20, 2015, Mooney sent Majied a CIR signed by O'Mard, the Principal, and Superintendent Donald Conyers, indicating that a line of duty injury ("LODI") was "approved." (*Id.* ¶ 11). Three days later, Majied submitted to the Self-Service Online Leave Application System ("SOLAS") an MRI and report from one "Dr. Freeman," claiming that she could not return to work due to "radicular pain to her feet." (*Id.* ¶ 12). Soon thereafter, however, a doctor from the Medical Bureau examined Majied and deemed her fit to return to work. (*Id.*

2

¶ 13). Accordingly, on May 6, 2015, O'Mard ordered Majied to return to work, and warned Majied that her absences were "being treated as unauthorized with deductions in pay." (*Id.* ¶ 14; Ex. H). In a letter to Conyers and O'Mard dated May 12, 2015, Majied demanded approved leave as an accommodation for her injuries, which she claimed were a result of the March 26, 2015 classroom incident. (*Id.* ¶ 15). Two days later, Majied received a notice from O'Mard that she was being investigated for verbal abuse. (*Id.* ¶ 16; Ex. J).

During this same time, Majied continued to grapple with the leave and injury claims processes. After being "barred from submitting any further leave extensions or medical documentation" through SOLAS on May 15, 2015, Majied received an email on June 2, 2015, notifying her that she had withdrawn her LODI application and would therefore be placed on unauthorized leave. (*Id.* ¶¶ 17, 19; Ex. N). Three days later, she received a letter advising that she was on leave without pay or health benefits, backdated to March 27, 2016. (*Id.* ¶ 20; Ex. O). When Majied contacted "Human Resources Connect" to inform them that she had never withdrawn her LODI application, the Supervisor of the Call Center informed her that the Superintendent had denied her LODI request. (*Id.* ¶ 21). Majied attempted to contact her school's secretary, administration, and Human Resources Connect about the matter, but failed; as a result, she sought assistance from the UFT. (*Id.* ¶ 21). UFT District Representative James Vasquez told Majied that a Step-1 grievance had been lodged with the Superintendent with the aim of removing the administrative bar to her LODI status, but cautioned that the matter "would take years to be heard." (*Id.* ¶ 21). On June 28, 2015, Vasquez provided Majied a denied LODI request from the Superintendent, but Majied claims she "never received [a] formal denial letter or a reason for the denial/disapproval from the DOE." (*Id.* ¶ 24).

At or about the same time, Majied also began seeking relief pursuant to the FMLA. First,

3

she "continuously" contacted her payroll secretary and Human Resources Connect "Medical Leaves"; when that proved unsuccessful, she sought help from UFT Representatives Dermot Smyth and John Harrington. (*Id.* ¶ 22). Majied claims that the UFT representatives "tried to coerce plaintiff to waive her rights" by signing a "restoration of health" form, but she refused. (*Id.* ¶ 22). Around the same time, Majied received a paper form indicating an unsatisfactory performance evaluation in addition to "disciplinary letters, and a copy of an incomplete . . . Corporal Punishment Report and Intake Form," which had previously been submitted to the Office of Special Investigations. (*Id.* ¶ 25; *see* Ex. T). On July 16, 2015, however, the Director of Medical Leaves approved Majied's FMLA benefits, albeit for different dates than those she had requested. (*Id.* ¶ 26). The Director's approval reinstated health benefits for Majied and her children. (*Id.* ¶ 27).

That same month, Majied also applied for disability benefits through the UFT Welfare fund and claims to have discovered that her Step-1 grievance was never filed. (Compl. ¶ 28). In August 2015, Majied applied for "Teachers Retirement Accidental Disability," but her claim was denied "with much" of her "medical evidence disregarded." (*Id.* ¶ 30). That November, Majied claims that UFT canceled her prescription drug benefits, refusing to reinstate them "unless she filed an OP160 leave form." (*Id.* ¶ 31). Ultimately, Majied brought charges with the Equal Employment Opportunity Commission ("EEOC") against the DOE, UFT, and TRS alleging disability discrimination and retaliation. (*Id.* ¶ 32). After filing, Majied learned that her health benefits were canceled, backdated to September 8, 2015. (*Id.* ¶ 33). Majied again applied for accidental disability benefits, but on April 20, 2016, her claim was denied by TRS, which "disregard[ed] the preponderance of medical evidence submitted." (Compl. ¶ 35). On May 17, 2016, Majied ran into UFT Special Representative Tom Bennett and approached him with a

4

question; in response, he "overreacted making a mockery" of Majied's disability and stated, "I don't want you people near me." (*Id.* ¶ 36). Subsequently, the Director of Human Resources granted Majied an authorized leave of absence from September 8, 2015 through June 30, 2016, and she successfully obtained "UFT Welfare fund benefits." (*Id.* ¶¶ 37, 39, 41).

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Majied's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).[1] A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, because Majied is proceeding *pro se*, her Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Nonetheless, a *pro se* litigant must still state a plausible claim for relief. Put another way, the Court's duty to liberally construe a

---

[1] The UFT also moves to dismiss pursuant to Rule 12(b)(1). (Docket No. 23). That argument is addressed separately below.

5

plaintiff's complaint is not the equivalent of a duty to re-write it." *Thomas v. N.Y. City Dep't of Educ.*, No. 15-CV-8934 (JMF), 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks, citation, and alterations omitted).

## DISCUSSION

Liberally construed, Majied's Complaint alleges against the DOE disability discrimination claims under the ADA, the NYSHRL, and the NYCHRL; an interference claim under the FMLA; retaliation claims under the First Amendment, the FMLA, the ADA, the NYSHRL, and the NYCHRL; and a state-law claim for intentional infliction of emotional distress. Majied's claims against the UFT and TRS are even less clear, but she seems to bring claims for breach of the duty of fair representation against the former and claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, against the latter. The Court will address Majied's federal claims against the DOE before turning to her federal claims against the UFT and TRS. As the Court will explain, there is no need to reach the merits of Majied's claims under state and local law.

**A. Claims Against the DOE**

   **1. Discrimination Under the ADA**

Discrimination claims under the ADA are analyzed under the burden-shifting scheme adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 58, 72-73 (S.D.N.Y. 2016). Significantly, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Even

measured against this fairly lenient standard, however, Majied's discrimination claim falls short. Put simply, her conclusory assertions aside, she fails to allege any facts suggesting that Defendants treated her less well *because of* a disability. In fact, as the DOE points out, Majied's own Complaint establishes that she was denied LODI leave not because she was disabled, but because the school's administration determined that the evidence did not support her claim for LODI status. (*See* Docket No. 21, at 14). Majied's subjective belief that she was treated differently on account of a disability is plainly not enough to state a claim. *See, e.g.*, *Smith v. Bronx Cmty. Coll. Ass'n*, No. 16-CV-3779 (JMF), 2017 WL 727546, at *2 (S.D.N.Y. Feb. 23, 2017) ("It is well established . . . that a plaintiff's subjective belief that she was the victim of discrimination, no matter how strongly felt, is insufficient to satisfy the burden to plead facts that could plausibly support an inference of discrimination."). Instead, "[w]here, as here, plaintiff has not pled any connection between a disability and an adverse employment action, dismissal is appropriate." *Jackson v. Elmhurst Hosp. Ctr.*, No. 10-CV-5248 (RRM), 2012 WL 868965, at *6 (E.D.N.Y. Mar. 14, 2012); *see also Smith v. Reg'l Plan Ass'n Inc.*, No. 10-CV-5857 (BSJ), 2011 WL 4801522, at *5-6 (S.D.N.Y. Oct. 7, 2011) (dismissing an ADA claim in part because the plaintiff made no allegation that any adverse action was "because of" his disability).

2. **Interference Under the FMLA**

Next, Majied brings an interference claim under the FMLA, which gives eligible employees an "entitlement" to twelve workweeks per year of unpaid medical leave. 29 U.S.C. § 2612(a)(1)(D). The Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. 29 U.S.C. § 2615(a). Critically, however, "whatever the nature of the alleged interference, a plaintiff can establish a violation of the Act only if the employer's actions 'ultimately result in the denial of a

7

benefit under the FMLA.'" *Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252 (JMF), 2015 WL 4760184, at *3 (S.D.N.Y. Aug. 12, 2015) (quoting *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 173 (D. Conn. Apr. 27, 2015)); *see also, e.g.*, *Cunha v. Winncompanies*, No. 3:13-CV-01789 (MPS), 2014 WL 2871588, at *2-3 (D. Conn. June 24, 2014) (citing cases for the proposition that a plaintiff must prove that he or she was prejudiced to maintain an interference claim under the FMLA). That requirement dooms Majied's claim, as the record is clear that she received the leave to which she was entitled to under the law. To be sure, the DOE granted Majied leave from March 27, 2015, through June 30, 2015, as opposed to June 5, 2015, to September 5, 2015, the period she requested. (Compl. ¶¶ 22, 26; Exs. Q, V). But that is only because, under DOE policy, the "12 week FMLA entitlement begins the first consecutive day of absence." (Compl. Ex. V). And, in any event, Majied fails to identify how she was prejudiced by the DOE's decision to credit her with FMLA leave for a period earlier than (but overlapping with) the one she requested. Accordingly, Majied's claim must be and is dismissed. *See, e.g.*, *Sarno v. Douglas Elliman Gibbons & Ives, Inc.*, 183 F.3d 155, 161-62 (2d Cir. 1999) (holding that the plaintiff failed to establish an interference claim because he had received the twelve workweeks of leave to which he had been entitled); *Stuart*, 2015 WL 4760184, at *4 (dismissing an FMLA interference claim where there was "no evidence that [the plaintiff] was denied a benefit to which she was entitled under the FMLA as [the defendant] approved each and every request for leave that she made"); *Bond v. Sterling, Inc.*, 77 F. Supp. 2d 300, 306 (N.D.N.Y. 1999) ("Since Plaintiff was given the leave which she requested and was entitled to under the FMLA (a fact she does not dispute), her claim . . . that defendants interfered with that right must be dismissed."); *cf. Roberts v. AIG Global Inv. Corp.*, No. 06-CV-5966 (GEL), 2008 WL 4444004, at *5 (S.D.N.Y. Sept. 30, 2008) (denying summary judgment where there was evidence

that the plaintiff had taken his FMLA leave *later* than he wanted due to the defendants' discouragement).

### 3. Retaliation Claims

Majied also brings a slew of retaliation claims, under the First Amendment, the FMLA, and the ADA. Majied's First Amendment retaliation claim is easily rejected. To bring such a claim as a public employee, Majied has to prove, as a threshold matter, that "the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest." *Garcia v. Hartford Police Dept.*, 706 F.3d 120, 129-30 (2d Cir. 2013) (internal quotation marks and citation omitted). Whether an employee's speech addresses a matter of public concern turns on "whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Routolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)). That is, a grievance that is "personal in nature and generally related to [the employee's] own situation . . . is unprotected by the First Amendment." *Norton v. Breslin*, 565 F. App'x 31, 34 (2d Cir. 2014). Here, none of the speech potentially at issue — from Majied's requests for leave to her complaints about her treatment — comes close to qualifying as speech on matters of public concern, as all of it was "personal in nature and generally related to [the employee's] own situation." *Norton*, 565 F. App'x at 34. Accordingly, it was "unprotected by the First Amendment," and her First Amendment retaliation claim fails as a matter of law. *Id.*

Majied's retaliation claims under the FMLA and the ADA present closer calls, but they too ultimately fall short. To bring claims under either statute, a plaintiff must establish, among other things, that she engaged in protected activity under the relevant statute, that she suffered an adverse employment action, and that "the adverse employment action occurred under

9

circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2006) (per curiam) (FMLA); *accord Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (ADA). Generally, "a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia v. Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). As the Second Circuit has held, however, more is required "[w]here . . . gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). That is the case here. Although Majied arguably identifies some adverse employment actions after she requested accommodation for her disability and FMLA leave (for example, the verbal abuse investigation and the denial of her LODI claim), she alleges nothing beyond mere proximity that could support an inference of retaliatory intent. Yet, on Majied's own account, the alleged adverse employment actions that occurred after her allegedly protected activity were part of a pattern of such actions that began immediately after the March 26, 2015 incident and, thus, predated any plausibly protected activity. Because Majied alleges that the adverse job actions began "before she requested FMLA leave [and reasonable accommodation under the ADA], and because she relies only on temporal proximity to suggest retaliatory intent, her [FMLA and ADA] retaliation claim[s] fail[]." *Elliot-Leach v. N.Y.C. Dep't of Educ.*, No. 16-3098-CV, 2017 WL 4071121, at *2 (2d Cir. Sept. 14, 2017) (summary order); *see also, e.g.*, *Manz v. Gaffney*, 56 F. App'x 50, 53 (2d Cir. 2003) (summary order) (affirming dismissal of an ADA retaliation claim on the ground that "any alleged adverse actions taken after the complaint was filed were consistent with actions taken before the filings and therefore cannot satisfy a claim of retaliation").

## B. Claims Against the UFT

The Court turns, then, to Majied's federal claims against the UFT. Liberally construed, Majied's Complaint appears to allege that the UFT breached its duty of fair representation. To the extent that she alleges such claims arising from the Labor Management Relations Act ("LMRA"), however, they are clearly without merit, as it is well established that "public employees are not covered by that statute." *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam). Thus, Majied's only colorable basis for a fair representation-claim under federal law is the ADA. *See, e.g.*, *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998) ("[A] union may . . . face liability under . . . the ADA if it breaches its duty of fair representation."); *see also Holcombe v. U.S. Airways Grp., Inc.*, 976 F. Supp. 2d 326, 338-39 (E.D.N.Y. 2013) (noting the distinction between fair-representation claims brought under the LMRA and ADA). "A plaintiff claiming that a union discriminated or retaliated against her based on her disability is required to show that (1) the union breached its duty of fair representation, and (2) that the union's actions were motivated by a discriminatory or retaliatory animus." *Woldeselassie v. Am. Eagle Airlines/Am. Airlines*, No. 12-CV-07703 (LGS), 2015 WL 456679, at *10 (S.D.N.Y. Feb. 2, 2015), *aff'd sub nom. Woldeselassie v. Am. Eagle Airlines, Inc.*, 647 F. App'x 21 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1225 (2017), *reh'g denied*, 137 S. Ct. 2151 (2017). "[A] union breaches [its] duty . . . when its conduct toward a member . . . is arbitrary, discriminatory, or in bad faith. Put differently, a breach occurs when a union fails to serve the interests of all members without hostility or discrimination toward any, [ ] exercise its discretion with complete good faith and honesty, [or] avoid arbitrary conduct." *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 276-77 (2d Cir. 2004).

11

Applying those standards here, Majied's fair-representation claim under the ADA is without merit. First, Majied's suspicions about her Union representatives notwithstanding, the record makes plain that the Union made efforts to *help* her obtain LODI leave. That is, Majied's conclusory assertions regarding the UFT's invidious motivations (for example, that the UFT tried "to coerce [her] to waive her rights," (Compl. ¶ 22)) aside, the Complaint fails to allege what actions the Union could plausibly have taken that it failed to take on her behalf. Second, and in any event, the Complaint fails to allege facts plausibly establishing that the UFT engaged in behavior that was "arbitrary, discriminatory, or in bad faith." *Ramey*, 378 F.3d at 276. The closest Majied comes is her allegation that Bennett, the UFT Special Representative, "made a mockery of plaintiff's disability and stated to her 'I don't want you people near me.'" (Compl. ¶ 36; Ex. B-1). Notably, however, Majied's own original account of that encounter was more benign. (Compl. Ex. B-1 (stating that Majied "approach[ed] the UFT representative [Mr. Bennett] and as she approached he told her he feels threaten [sic] he doesn't want you people near me [sic]")). And in any event, a solitary, stray remark — and an ambiguous one at that — is insufficient to support an inference of discriminatory animus. *See, e.g.*, *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (holding that stray remarks "do not constitute sufficient evidence to make out a case of employment discrimination."). Accordingly, Majied's ADA fair-representation claim against the UFT must be dismissed. *See Holcombe*, 976 F. Supp. 2d at 338-39 (granting the defendant union's motion to dismiss the plaintiff's ADA discrimination claim because the plaintiff failed to "allege any facts that could be read to raise an inference that the Union acted in any particular way *because* of her disability").

**C. Claims Against the TRS**

The TRS, the final Defendant, has not yet appeared or answered the Complaint. Nevertheless, pursuant to Title 28, United States Code, Section 1915(e)(2)(B), the Court must, on its own initiative, dismiss an *in forma pauperis* complaint, or any portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). Majied's claims against the TRS qualify for dismissal under that provision. Although the precise nature of Majied's claim against the TRS is unclear, the Court construes her Complaint to be raising a claim under Section 502(a)(1)(B) of ERISA, which provides for recovery of wrongfully denied health benefits. To state a claim under that provision, "a plaintiff must show that: (1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan." *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011) (summary order). Majied fails to do so adequately for two independent reasons.

First, Majied "provide[s] no factual basis to suggest that" the TRS is a "covered plan[] or administrator[] or trustee[] of a covered plan — the only types of defendants that could be liable under § 502(a)(1)(B)." *Id.* at 17. In fact, it appears that the TRS plan is *not* covered by ERISA. The TRS, which "provides and administers the pension system for educators who work for the New York City Department of Education . . . and participating New York City charter schools," qualifies as a government pension plan. *Grant v. Teachers' Ret. Sys. of the City of N.Y.*, No. 07-CV-5534 (GEL), 2007 WL 3145093, at *1 n.1 (S.D.N.Y. Oct. 25, 2007). It follows that it is exempt from the requirements of ERISA's Title I, including those pertaining to employee benefit plans. *See Cartey v. Teachers' Ret. Bd.*, No. 08-CV-1608 (PAC) (DFE), 2009 WL 8747196, at

13

*2 (S.D.N.Y. June 26, 2009) (noting "it is clear that TRS is a governmental plan"), *aff'd sub. nom. Cartey v. City Univ. of N.Y.*, 379 F. App'x 29 (2d Cir. 2010); *Grant*, 2007 WL 3145093 at *5 (citing 29 U.S.C. §§ 1002(32), 1003(b)(1)); *see also Gualandi v. Adams*, 385 F.3d 236, 242 (2d Cir. 2004)); 29 U.S.C. §§ 1051-1061, 1101-1114, 1131-1147.

Second, Majied alleges only that she applied for disability benefits twice and that the TRS denied her applications without considering all the medical evidence. (Compl. ¶¶ 3, 30, 35). Such barebones allegations are insufficient to state a claim. *See, e.g.*, *Guerrero v. FJC Sec. Servs.*, No. 09-CV-216 (SHS) (RLE), 2010 WL 11530627, at *3 (S.D.N.Y. May 26, 2010) (dismissing an ERISA claim on the ground that the plaintiff submitted "no facts or information which would indicate a plausible claim for relief" and "merely" made "conclusory allegations" and submitted the health benefits plans), *aff'd*, 423 F. App'x 14 (2d Cir. 2011); *Prof'l Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund*, No. 16-CV-4838 (KBF), 2016 WL 6900686, at *4-6 (S.D.N.Y. Nov. 22, 2016) (dismissing an ERISA claim on the ground that the complaint failed to contain "any specific allegations that the Plan require[d]" the defendant to do what the plaintiff alleged it was required to do and failed to "reference any such provisions of the Plan"). Thus, Majied's claim against the TRS must be and is dismissed.

## D. Claims Under State and Local Law

For the foregoing reasons, all of Majied's federal claims are dismissed. To the extent that she asserts additional claims under state and local law — under the NYSHRL, the NYCHRL, for intentional infliction of emotional distress, or for breach of the state-law duty of fair representation, for example — the Court declines to exercise supplemental jurisdiction pursuant to Title 28, United States Code, Section 1367. Under that provision, a district court has discretion over whether to exercise jurisdiction over state-law claims "that are so related to

14

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Here, there is no reason to depart from that general rule. Given the relatively early stage of the case, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), do not counsel in favor of exercising jurisdiction. Accordingly, Majied's remaining claims are also dismissed.

## CONCLUSION

For the foregoing reasons, the DOE's and UFT's motions to dismiss are granted, and Majied's claims against them are dismissed. Additionally, the Court dismisses Majied's claims against the TRS, even though the TRS has not yet appeared.

The leaves the question of whether Majied should be permitted leave to amend her complaint even though she does not request it. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Exercising that discretion here, the Court declines to *sua sponte* grant Majied leave to amend the Complaint. First, many of the problems with

15

Majied's claims — including but not limited to her claims against the TRS — are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Second, Majied was already granted leave to amend her complaint to cure deficiencies raised in the DOE's and UFT's motions to dismiss and was explicitly cautioned that she "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motions to dismiss." (Docket No. 22). Finally, she "has not requested permission to file [an amended complaint], nor has [s]he given any indication that [s]he is in possession of facts that would cure the problems" identified in the instant opinion dismissing. *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed (1) to terminate Docket Nos. 17 and 23 and (2) to close the case.

SO ORDERED.

Dated: January 8, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge